IN THE UNITED STATES DISTRICT COURT

                         FOR THE DISTRICT OF OREGON

RICHARD M. WILLMES,            )
                               )      Civil No. 07-606-ST
          Petitioner,          )
                               )
     v.                        )
                               )
CHARLES DANIELS, Warden, and   )
NATIONAL TOXICOLOGY            )
LABORATORIES,                  )
                               )      FINDINGS AND RECOMMENDATION
          Respondents.         )

     Gerald M. Needham
     Assistant Federal Public Defender
     101 S.W. Main Street, Suite 1700
     Portland, Oregon 97204

          Attorney for Petitioner

     Karin J. Immergut
     United States Attorney
     Scott Erik Asphaug
     Assistant United States Attorney
     1000 SW Third Avenue, Suite 600
     Portland, OR 97204-1008

          Attorneys for Respondent


     1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge.

Petitioner brings this federal habeas corpus action pursuant to 28 U.S.C. § 2241 in which he alleges that his right to due process of law was violated during a prison disciplinary hearing at FCI-Sheridan. For the reasons which follow, the Petition for Writ of Habeas Corpus (docket #1) should be granted.

## BACKGROUND

Petitioner is currently incarcerated at FCI-Sheridan as a result of his 1990 conviction in the District of Nebraska on one count of Conspiracy to Manufacture, Distribute and Possess Methamphetamine. At approximately 9:00 p.m. on October 29, 2006, Officer Van Dusen administered a urinalysis examination to both petitioner and Richard Forrest, petitioner's cellmate, to determine if either inmate had ingested narcotics.

Approximately two months earlier, Forrest suffered severe burn injuries stemming from a fire in the prison kitchen. As a result, he was prescribed OxyContin to alleviate his pain. Petitioner's Exhibit B, ¶ 4. At the time of the drug test, Forrest informed Van Dusen that his sample would test positive due to his use of OxyContin, a narcotic which he had taken twice that day at 6:30 a.m. and 8:00 p.m. in accordance with his physician's prescription. *Id* at ¶¶ 6, 16.

On November 2, 2006, the National Toxicology Laboratories transmitted the results of the urinalyses to prison officials at

2 - FINDINGS AND RECOMMENDATION

FCI-Sheridan. Petitioner's sample tested positive for Morphine, and Forrest's sample, surprisingly, came back clean. Because petitioner was not taking any prescribed medication which would test positive for Morphine, he was charged with Use of Narcotics and referred to the Unitary Disciplinary Committee ("UDC") for a hearing on November 7, 2006.

Petitioner was given the opportunity to provide a statement to the UDC, and said only "not guilty." Declaration of Kyle G. Olsen, ¶ 6; Respondent's Attachment 1, p. 5. Due to the seriousness of the charge, petitioner's case was referred from the UDC to Michael Griffin, a Disciplinary Hearings Officer ("DHO") at FCI-Sheridan. The UDC recommended that the DHO take away 40 days of petitioner's good conduct time and impose 14 days in disciplinary segregation. *Id.*

Petitioner theorized that Van Dusen had mistakenly mislabeled the samples, as evidenced by the fact that Forrest's sample was clean despite his use of OxyContin. In order to present such a defense, petitioner asked that Officer Van Dusen be called as a witness at his DHO hearing. Respondent's Attachment 1, pp. 12, 14. Prior to the disciplinary hearing, the DHO sent the following email to Van Dusen in this regard:

> On 10-29-06, you collected a urine sample from Inmate Willmes . . . . The sample came back positive for Opiates and Morphine. He claims he is not guilty and wants to call you as a witness. Inmate Willmes claims you mixed up the bottles.

3 - FINDINGS AND RECOMMENDATION

> Would you provide me a memo indicating the steps you took when you collected the urine sample. Provide any information regarding any deviation from procedures. I may have you appear at the hearing. What is your schedule?

*Id* at 10.

In response, Officer Van Dusen sent an email to the DHO which advised him that "I am working evening watch with Thurs.-Fri. off and normally arrive at the Institution around 3 PM." *Id* at 11. As discussed below, his email also described the steps he took when collecting the urine samples. *Id.*

Although Van Dusen had clearly informed the DHO that he did not work on Thursdays, the DHO proceeded to schedule petitioner's disciplinary hearing for Thursday, December 12, 2006. Van Dusen was not present at the hearing, and it does not appear from the record that petitioner was offered any explanation regarding Van Dusen's absence at that time. *Id* at 2. In lieu of any personal testimony, a portion of Van Dusen's email to the DHO was entered into the hearing record and reads as follows:

> I was ordered by LT Bithell to collect urine samples from Inmate Willmes and his cell mate Inmate Forrest. Both inmates were done one by one completely. I suspected that they were up to something. I ordered each inmate to stand there as I completed the paperwork and both inmates watched me as the bottles were sealed and the bags sealed. There is no possible way that the inmates samples were mixed up as each inmate was completed separately and completely before the other inmate was started. Both inmates were warned that the test was conducted in the visiting room and that they were under surveillance by camera.

*Id.*

4 - FINDINGS AND RECOMMENDATION

> Petitioner gave the following statement:
>
> Not guilty. I will be clean for four years in March. My sample was taken at 9:00 p.m. at night. My cellie was on a medication. They tested both of us. Officer Van Dusen left the samples in the visiting room. Forrest . . . was taking medication for a while and his test came back negative. I think Officer Van Dusen mixed up the bottles.

*Id* at 1.

The DHO found petitioner guilty as charged and ordered that he forfeit 40 days of good conduct time, spend 30 days in disciplinary segregation, lose social visiting privileges for one year, and lose his telephone privilege for one year. *Id* at 3.

Petitioner sought administrative review on the basis that it was improper for the DHO to accept Van Dusen's written statement in lieu of live testimony. Respondent's Attachment 2, p. 1. The Regional Director denied relief, reasoning that "the witness was not at the institution on the day of the hearing" and that "an inmate is not entitled to question witnesses at a prison disciplinary hearing." *Id.* Petitioner's administrative appeals were also denied.

Petitioner filed his Petition for Writ of Habeas Corpus on April 23, 2007. He claims that Van Dusen's absence from the DHO hearing violated his right to due process of law. He asks the court to overturn the DHO's ruling, restore his good conduct time, and restore his visitation and telephone privileges.

///

5 - FINDINGS AND RECOMMENDATION

**FINDINGS**

Due process in prison disciplinary hearings requires prison officials to: (1) provide advance written notice of the disciplinary violation; (2) provide a written statement by a factfinder as to the evidence relied upon and the reasons for disciplinary action; and (3) allow the charged inmate an opportunity to call witnesses and present documentary evidence in his defense when allowing him to do so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Where prison officials do not allow witnesses to testify at a hearing, they must justify such a decision. *Ponte v. Real*, 471 U.S. 491, 497 (1985). "[T]hey may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." *Id.*

The DHO's report following the disciplinary hearing did not explain why Van Dusen was not present. Respondent's Attachment 1, p. 2. The Regional Director was the first to offer a justification for the absence when he indicated that Van Dusen was not available because he was not at the Institution on the day of the hearing. Respondent's Exhibit 2, p. 1. The fact that the DHO, in his

6 - FINDINGS AND RECOMMENDATION

discretion, set the hearing for a day on which he knew Van Dusen would not be present does not render Van Dusen unavailable.

Not only was Van Dusen absent from the DHO hearing despite his availability, but petitioner was never allowed to interview or otherwise submit questions to Van Dusen for a written response prior to the DHO hearing. At no time was petitioner ever informed that institutional safety or correctional goals prevented Van Dusen from attending the hearing, and respondents make no such allegation in this proceeding. Despite excluding petitioner's key witness from the disciplinary hearing, the DHO nevertheless found petitioner at fault in part because "he has not provided any facts or evidence to support his denial." Respondent's Attachment 1, p. 3.

Pursuant to *Wolff* and *Ponte*, petitioner was entitled to call Van Dusen at his DHO hearing unless it would have been unduly hazardous to institutional safety or correctional goals to do so. Petitioner should have had the opportunity to develop his defense that his urine sample was unintentionally switched with Forrest's after the two samples were set on a counter, unlabeled, right next to each other. Van Dusen might have provided testimony to support this contention. Instead, Van Dusen submitted only a written statement in response to the DHO's email which did not address petitioner's specific concerns regarding collection and chain of custody issues.

7 - FINDINGS AND RECOMMENDATION

The Regional Director's conclusion that petitioner has no right to question witnesses during a disciplinary hearing is at odds with the due process requirements outlined in *Wolff*. Indeed, "the decision to preclude the calling of a witness should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person." *Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir. 1982). As this was not done in petitioner's case, his disciplinary hearing did not comport with due process.

## **RECOMMENDATION**

Based on the foregoing, it is the recommendation of this court that the Petition for Writ of Habeas Corpus (docket #1) be GRANTED, and that a judgment be entered requiring respondent to RESTORE petitioner's good time credits and lost privileges immediately. Respondent Daniels (or his designee) may, however, impose these sanctions upon petitioner again if the DHO holds a new hearing which complies with the above requirements, and finds that petitioner committed the charged offense.

## **SCHEDULING ORDER**

Objections to these Findings and Recommendation, if any, are due December 21, 2007. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

8 - FINDINGS AND RECOMMENDATION

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this <u>4th</u> day of December, 2007.

>       /s/   Janice M. Stewart           
>             Janice M. Stewart
>             United States Magistrate Judge

9 - FINDINGS AND RECOMMENDATION